SCOTT N. SCHOOLS (SCBN 9990)
United States Attorney

BRIAN J. STRETCH (CSBN 163973)
Chief, Criminal Division

PATRICIA J. KENNEY (CSBN 130238)
Assistant United States Attorney

    450 Golden Gate Avenue, 9th Floor
    San Francisco, CA 94102
    Telephone: 415.436.6857
    Facsimile:  415.436.6748
    Email: patricia.kenney@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>             Plaintiff, <br>    v. <br> APPROXIMATELY $33,967 IN UNITED STATES CURRENCY, <br>             Defendant. | No. 07- <br><br> COMPLAINT FOR FORFEITURE |

NATURE OF THE ACTION

1. This is a judicial forfeiture action, as authorized by 21 U.S.C. § 881(a)(6), involving the seizure of defendant Approximately $33,967 in United States Currency which was seized as money furnished or intended to be furnished by a person in exchange for a controlled substance, or money traceable to such an exchange, or money used or intended to be used to facilitate a violation Subchapter I, Chapter 13 of Title 21 United States Code.

JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355(a), and 21 U.S.C. § 881(a)(6).

3. This action is timely filed in accordance with 18 U.S.C. § 983(a)(3)(A).

4. Venue is proper because defendant Approximately $33,967 in United States Currency was seized in the Northern District of California. 28 U.S.C. §§ 1355(b) and 1395.

5. Intra-district venue is proper in the San Francisco Division within the Northern District of California.

## PARTIES

6. Plaintiff is the United States of America.

7. Defendant is Approximately $33,967 in United States Currency ("defendant $33,967").

## FACTS

8. On or about May 23, 2007, DEA received detailed information from a confidential source that Jeffrey HUNTER and Lamar WILLIAMS were suspected drug/money couriers and were flying with no checked luggage from Atlanta, Georgia, to San Francisco International Airport ("SFO") on Delta Airlines Flight #611 which was scheduled to arrive that afternoon. HUNTER and WILLIAMS made the reservations on the day of travel, May 23, 2007, approximately one hour before the flight departed and paid $539.40 in cash for a one-way fare for each ticket. Based on my training, I am aware that Atlanta, Georgia, is a drug hub – a city to which drugs may be transported from source cities, such as San Francisco, for subsequent distribution.

9. After Delta Airline flight #611 arrived at gate C40 at SFO at approximately 1:10 p.m., agents from DEA Task Force 2 observed two individuals, later identified as HUNTER and WILLIAMS, deplane. As HUNTER walked through the terminal, he was observed continuously looking over his shoulder.

10. S/A Willie Byrd and Task Force Agent ("TFA") Steve Maes approached HUNTER and WILLIAMS just after they passed the secured check point. S/A Byrd and TFA Maes identified themselves as agents to HUNTER by showing their credentials and conducted a consensual encounter after advising HUNTER that he was not under arrest and was free to go. The agents then asked HUNTER for identification and about the purpose of his travel. HUNTER

Complaint for Forfeiture
No. 07-                           2

provided a California driver's license. HUNTER said that he had flown to Atlanta, Georgia, for the "fight." When asked how long HUNTER was in Atlanta, HUNTER said he was there for "a couple of days," but upon further questioning stated he was in Atlanta for four days. When asked for what "fight" he had flown to Atlanta, HUNTER stated he was in Atlanta for the Oscar Dela Hoya/Floyd Mayweather boxing match. S/A Byrd informed HUNTER that the Hoya/Mayweather boxing match took place in Las Vegas on May 5, 2007. HUNTER stated that he was in Las Vegas for the boxing match, came back to San Francisco and flew out to Atlanta "a couple of days" later. TFA Maes asked HUNTER why he purchased a cash one way ticket to San Francisco from Atlanta. HUNTER replied that he missed his flight from another air carrier and decided to purchased an airline ticket with Delta because his other ticket was non-refundable.

11. TFA Maes asked HUNTER if he currently had illegal drugs or a large amount of United States currency in his possession. HUNTER acknowledged he had a large amount of United States currency. When asked how much currency he had, HUNTER responded "twenty thousand." When asked about the source of the currency, HUNTER said he won it in Vegas. HUNTER told agents that he opened up a bank account while in Atlanta with Bank of America. HUNTER explained to agents that he was the owner of Happy Day's Marijuana Club in San Francisco.

12. TFA Maes asked HUNTER where the money was located and HUNTER stated the money was located inside his carry-on luggage. TFA Maes asked HUNTER if the agents could search his person and luggage. After HUNTER replied "yes," S/A Byrd located a white plastic Marriott Courtyard bag in the main compartment of his carry-on luggage that contained several rubber banded bundled of United States currency. HUNTER told the agents that everyone carries at least "ten racks in their pockets in Atlanta." Hunter explained to the agents that he carried the large amount of United States currency to "lay down tracks" and to purchase marijuana from vendors for his marijuana club.

13. TFA Maes told HUNTER that he was going to seize the currency pending further investigation. HUNTER told the agents that he needed the money to purchase marijuana for his marijuana shop and that he did not have any money to get home. S/A Byrd gave HUNTER a

Complaint for Forfeiture
No. 07-                                         3

1  $100 bill from the seized money. Subsequently, after being counted, the remaining United States
2  currency became defendant Approximately $33,967 in United States Currency. The
3  denominations of defendant $33,967 were: 154 x $100 dollar bills; 94 x $50 dollar bills;
4  674 x $20 dollar bills; 28 x $10 dollar bills; 20 x $5 dollar bills; 7 x $1 dollar bills. The manner
5  of the packaging and denominations of defendant $33,967 are consistent with those used for, or
6  from, the sale of illegal controlled substances.

7      14.    While S/A Byrd and TFA Maes spoke with HUNTER, S/A Jay Dial and TFA
8  Mahon approached WILLIAMS just after he passed the secured check point, identified
9  themselves as agents by showing their credentials and conducted a consensual encounter. TFA
10 Mahon advised WILLIAMS that he was not under arrest and was free to go. TFA Mahon asked
11 WILLIAMS for identification and confirmed by examining the California driver's license offered
12 that this was WILLIAMS. WILLIAMS explained that he had just arrived from Atlanta, Georgia,
13 where he was since Monday, May 21, 2007. WILLIAMS spent the time in Atlanta with
14 HUNTER. WILLIAMS said that he and HUNTER went to Atlanta to party at a rap concert.
15 WILLIAMS stated that they stayed at the "Western Hotel" but could not provide any information
16 regarding the hotel and where it was located.

17     15.    In response to TFA Mahon's question as to whether WILLIAMS had anything
18 illegal in his possession, including his luggage, WILLIAMS denied having anything illegal.
19 When TFA Mahon asked WILLIAMS if he had a large amount of United States currency in his
20 possession, WILLIAMS confirmed he had currency in his possession. WILLIAMS consented to
21 showing TFA Mahon the currency and removed currency from his left front pant pocket. The
22 currency was folded over in bundles which were secured together by bank bands and rubber
23 bands. WILLIAMS said the currency amounted to $6000. Subsequently, after being counted and
24 after returning a $50 to WILLIAMS for transportation from the SFO, there remained $5,030.

25     16.    WILLIAMS told the agents that the money was for the purchase of a home in
26 Atlanta. WILLIAMS planned to meet a real estate agent to look at residences for sale, but the
27 real estate agent did not appear for the scheduled appointment. WILLIAMS could not provide a
28 name or contact information for the real estate agent. Later in the consensual encounter,

Complaint for Forfeiture
No. 07-                                  4

1  WILLIAMS told agents that HUNTER was buying a house in Atlanta with the money found in
2  HUNTER's possession. WILLIAMS, however, was planning to purchase a small residence,
3  while HUNTER was planning on buying a mansion.

4      17.    WILLIAMS consented to a search of his carry-on bag, and began rummaging
5  through the bag. For officer safety reasons, TFA Mahon asked to search the bag and WILLIAMS
6  agreed. TFA Mahon began to search the bag but noticed a strong and distinct odor of marijuana
7  emanating from the bag. While TFA conducted the search, WILLIAMS became extremely
8  agitated and hostile and began yelling at the agents because he was upset about his bag being
9  searched. In fear that WILLIAMS might assault TFA Mahon, TFA Mahon stood up, and stopped
10 searching the bag. WILLIAMS never withdrew his consent to search the bag.

11     18.    TFA Mahon told WILLIAMS that he was detained based on the large amount of
12 United States currency in his possession, and the strong distinct odor of marijuana emanating
13 from the bag. WILLIAMS then began to calm down by not raising his voice. TFA did not locate
14 any illegal items or United States currency in WILLIAMS's bag, but noticed a cellular telephone
15 from "Metro", but which was no longer in service. WILLIAMS confirmed that he had a second
16 cellular telephone on his person. WILLIAMS said the marijuana smell was due to him being a
17 user of medical marijuana and produced a medical marijuana card from his wallet.

18     19.    When asked about employment, WILLIAMS said he was a high school football
19 coach for Washington High School, but that he was a volunteer and received no payment for his
20 service as coach. WILLIAMS said he was employed by Happy Days Cannabis Club in San
21 Francisco where he was paid $7.00 per hour.

22     20.    WILLIAMS explained that the United States currency in his pocket came from his
23 Bank of America checking account. Upon further questioning about that account, WILLIAMS
24 recanted and said he did not obtain the money from his Bank of America account.

25     21.    At approximately 1:55 p.m., TFA Kevin O'Malley had his certified narcotic
26 detection canine, "Elway," conduct a search of the baggage claim area where defendant $33,967
27 was secreted. During a systematic search of the baggage claim area, "Elway" made a positive
28 alert to defendant $33,967 by biting and scratching. This was an indication to TFA O'Malley

Complaint for Forfeiture
No. 07-                                  5

1  that the odor of narcotics was emanating from defendant $33,967. "Elway" is certified to detect
2  heroin, cocaine, marijuana, hashish and methamphetamine. TFA O'Malley has handled and
3  trained "Elway" since March of 1997. "Elway" has successfully located drugs over 300 times in
4  past cases and in training.

5      22.    TFA Kevin O'Malley also had his certified narcotic detection canine, "Elway,"
6  conduct a search of the baggage claim area where the $5,030 from WILLIAMS had been
7  secreted. During a systematic search of the baggage claim area, "Elway" made a positive alert to
8  $5,030 by biting and scratching. This was an indication to TFA O'Malley that the odor of
9  narcotics was emanating from the $5,030.

10     23.    An NCIC check on HUNTER revealed that HUNTER had two felony drug
11 convictions. HUNTER was convicted of transport/sell narcotic/control substance in 1988 of
12 violating California Health and Safety Code § 11352 and sentenced to four years prison and three
13 years probation. HUNTER was also convicted of possession/purchase cocaine base for sale in
14 2000 in violation of California Health and Safety Code § 11351.5 and sentenced to five years
15 probation and 93 days jail. In 2006, HUNTER was charged with violations of California Health
16 and Safety Code §§ 11357(C), 11359, 11360(A) involving possession of marijuana, possession
17 of marijuana for sale and sell/furnish/etc marijuana/hash.

18     24.    After DEA gave notice to HUNTER of the seizure of defendant $33,967,
19 HUNTER through his attorney, Ean Vizzi, filed an administrative claim.

20     25.    After DEA gave notice to WILLIAMS of the seizure of $5,030, WILLIAMS
21 failed to file a timely administrative claim. On DEA's record of notice sent, the DEA lists
22 WILLIAMS's attorney as Ean Vizzi. Because WILLIAMS filed no timely claim, the $5,030 is in
23 the process of being, or has been, administratively forfeited.

24     26.    Due to the totality of the circumstances, defendant $33,697 in United States
25 currency was seized as money furnished or intended to be furnished by a person in exchange for
26 a controlled substance, or traceable to such an exchange, or money used or intended to be used to
27 facilitate a violation of Subchapter I, Chapter 13 of Title 21 United States Code. Specifically,
28 based on the training and experience of the Task Force agents, the totality of the circumstances

Complaint for Forfeiture
No. 07-                          6

1  on which the seizure was based included the denominations of and packaging of the currency in
2  multiple bundles with rubber bands, no verification of the source of the currency, the canine
3  positive alert, the interviews and conflicting statements made by HUNTER and WILLIAMS,
4  airline tickets purchased on the same day of travel with cash.

## VIOLATION

27. The United States incorporates by reference the allegations in paragraphs one through 26 as though fully set forth.

28. Section 881(a)(6) of Title 21 of the United States Code, provides for the forfeiture of all money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of Subchapter I, Chapter 13 of Title 21 United States Code, all proceeds traceable to such an exchange and all money used or intended to be used to facilitate any violation of Subchapter I, Chapter 13 of Title 21 United States Code.

29. In light of the foregoing, defendant $33,967 in United States Currency is subject to judicial forfeiture.

\* \* \* \* \*

WHEREFORE, plaintiff United States of America requests that due process issue to enforce the forfeiture of defendant $33,967; that notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that judgment of forfeiture be entered; that the Court enter judgment forfeiting defendant $33,967; and that the United States be awarded such other relief as may be proper and just.

Respectfully submitted,

SCOTT N. SCHOOLS
United States Attorney

Dated: October 24, 2007

STEPHANIE M. HINDS
Assistant United States Attorney

Assigned to: Kenney
AUSA Kenney

Complaint for Forfeiture
No. 07-                                    7

VERIFICATION

I, Willie Byrd, state as follows:

1. I am a Special Agent with the Drug Enforcement Administration Task Force, United States Department of Justice, and am the case agent. As such, I am familiar with the facts, and the investigation leading to the filing of this Complaint for Forfeiture, including the reports of investigation generated.

2. I have read the Complaint and believe the allegations contained in it to be true.

\* \* \* \* \*

I declare under penalty of perjury that the foregoing is true and correct. Executed this on October 23, 2007, in San Francisco, California.

WILLIE BYRD
Special Agent
Drug Enforcement Administration

Complaint for Forfeiture
No. 07-                                           8